Norbert Butz *et al.*, Plaintiffs-Appellees, *v.* Joseph Butz *et al.*, Exrs. of the Estate of Eva Butz, Deceased, Defendants-Appellants.

(No. 72-261; )

Fifth District—July 26, 1973.

*Rehearing denied August 17, 1973.*

W. E. Ackermann, of Turner, Holder & Ackermann, of Belleville, for appellants.

Rogers D. Jones, of Jones, Ottesen & Fleming, of Belleville, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal from a decree for specific performance of an agreement for the conveyance of farm land entered by the Circuit Court of St. Clair County in favor of the appellees.

On July 22, 1954, Eva Butz, a widow, owner of the land in question, entered into a ten-year written lease with plaintiffs-appellees Norbert Butz, her son, and Lucille, his wife. The term of the lease was from

March 1, 1955 to March 1, 1965. It was entitled "Farm Lease With Option to Purchase," and provided that the lessees should have an "option to renew said lease for an additional ten-year term upon the conditions, covenants, and restrictions hereinafter set forth." The lease contained no provisions of any kind with regard either to the time or manner in which the option to renew should be exercised.

Paragraph 18 of the lease granted to the lessees "the exclusive right at their option for and during the period of the original term herein provided for or renewal thereof to purchase the demised premises for the sum of $25,595." The option to purchase further provided that it should not be exercisable by the lessees during the lifetime of the lessor and "shall be exercised by the lessees during a period of two years from date of lessor's death." The lessees were required in case they exercised the option to serve written notice of such election upon the personal representative of the lessor. By terms of the lease the lessor bound her heirs, executors, administrators and assigns to effect the conveyance of the property to the lessees if the option were exercised.

On July 30, 1962, Eva Butz executed her last will and testament. Paragraph FIFTH of her will provided,

"Since I have entered into an agreement with my son NORBERT BUTZ for the sale of my farm located in Shiloh Valley Township, St. Clair County, Illinois to be performed within two years from my death, I direct that my Executors shall carry into effect the terms of said agreement should my son, NORBERT, desire to complete and comply with its terms * * *."

Paragraph SIXTH of her will required that in case of election to exercise his option to purchase,

"* * * then my son NORBERT, his heirs or assigns, shall pay the additional taxes imposed upon my estate by reason of the increased valuations and the refusal of the Internal Revenue Service and/or the State of Illinois to accept the valuation of said farmlands as determined in the option agreement."

Eva Butz died on December 13, 1967, at the age of 96 leaving as her heirs nine living children and children of one of the six of her children who had predeceased her. The will was duly admitted to probate on January 17, 1968, and sons Joseph and Henry Butz were named as executors. On September 30, 1968, notice that the appellees, Norbert Butz and Lucille Butz, had elected to exercise the option to purchase was served upon the executors. The executors refused to convey the property and the optionees commenced a suit for specific performance which resulted in the decree here on appeal. Following denial of a posttrial motion for

rehearing, to vacate the decree or for judgment and decree in favor of the defendants, notice of appeal to this court was filed on September 5, 1972.

No question was raised at the trial court level about the validity of the lease or of the will. The issues presented to the trial court were: (1) Was the original lease renewed for another ten years effective March 1, 1965, and (2) were the provisions in the will regarding the option sufficient in law to sustain the right to an option even if the lease had expired. The trial court decided that the holding over by the lessees was sufficient to renew the lease for another ten years and hence keep the option alive. Having so decided the court granted specific performance, finding it unnecessary to discuss the second issue. The issues presented on appeal are the same as those presented to the trial court.

We disagree with the decision of the trial court that the holding over by the lessees under the circumstances present in this case was sufficient to renew the lease for an additional term but nevertheless affirm the judgment of the trial court upon different grounds.

■■ When a lease contains an option to renew and expresses the conditions under which the option can be exercised there is little doubt that when a tenant fails to meet these conditions his right to possession terminates with the lease, and if he holds over and is accepted by the landlord he becomes a tenant from year to year. But when the lease creates an option to renew without stating how or when it is to be exercised, what is the position of the holdover tenant?

It is the appellants' view that some overt act is required so the landlord will know whether or not the lease is being renewed, and that in the absence of such overt act the tenant who holds over becomes a tenant from year to year with only those provisions of the former lease pertaining to the rent and other matters essential to the farming of the land applicable to the tenancy from year to year. An option to purchase, for example, not pertaining to the rent or farming, would not carry over into the tenancy from year to year.

Several cases cited by the appellants ( *Clinton Wire Cloth Co. v. Gardner* (1881), 99 Ill. 151; *Goldsborough v. Gable* (1892), 140 Ill. 269, 29 N.E. 722; *Fitzgerald v. George J. Cooke Co.* (1907), 133 Ill.App. 479; *Besley v. Ridgely* (1915), 195 Ill.App. 435) do not support their position since none of the cases contain an option to renew.

Appellees claim that since the lease was silent as to the mode of renewal by the lessees, the mere holding over renewed the lease for another ten-year term and the option to purchase was therefore continued. In support they cite *Cusak v. The Gunning System* (1903), 109 Ill.App. 588. In this case a lease contained the provision "* * * we hereby rent

The Gunning System the north wall * * * for advertising purposes for a period of one (1) year from date, with the privilege of its renewing yearly on like terms." But in that case the lessee did make an effort to renew. The lease expired on a Sunday; he appeared on Saturday (this was 1903) at the office of the lessor but the office was closed. On Monday, the next business day, he again appeared with his request for renewal. The court held this to be sufficient. In the instant case it should be noted there is no evidence of any attempt to renew. Appellees also cite *Anderson v. Dodsworth* (1920), 292 Ill. 335, 127 N.E. 43, in which the lease contained a provision that the "* * * lessee shall have the privilege of extending this lease on the same terms and conditions as herein expressed and at the same rental from year to year for the period of one, two, or three years from the first day of March 1915." The lessee did not request an extension. The court expressed the view that since he failed to request an extension, it would be assumed that the lease was extended for the shorter period, namely one year. This conclusion of the court was not necessary since the lessee had held over for more than one year and had become a tenant from year to year, thus being entitled to the statutory notice period. Whether or not this notice period applied was a real issue in the case. Furthermore, the suit was between the holdover tenant and a new lessee and not between the landlord and his tenant.

■■ Appellants cite section 12 of the Landlord and Tenant Act (Ill. Rev. Stat. 1971, ch. 80, sec. 12) which states that "When the tenancy is for a certain period, and the term expires by the terms of the lease, the tenant is then bound to surrender possession, and no notice to quit or demand of possession is necessary." Appellants argue that since the lease was not renewed, it expired by its own terms and the landlord was then entitled to possession without notice. But since the tenants remained on the farm, were not dispossessed, and the landlord accepted rent, a tenancy for another year arose, under which the terms of the former lease do not apply except as they are applicable to the "new condition of things" under the new form of tenancy. In support of this view appellants cite several cases, including *Bell v. Groom* (1922), 224 Ill.App. 58 and *Wanous v. Balaco* (1952), 412 Ill. 545, 107 N.E.2d 791. In the latter case there was an option to purchase which expired, the court said, when the original lease terminated and the tenant became a tenant from year to year.

Both the appellants and the appellees cite *Vincent v. Laurent* (1911), 165 Ill.App. 397 to support their views regarding renewal of the lease. The case involved a lease for five years with a provision that the lessee should "* * * have the refusal to release said premises for five years

more at the same rate at the expiration of this lease." The court in that case stated "Upon the examination of the cases cited by counsel we conclude the better doctrine to be where the lessee has an option to *renew* a lease, that he should notify the lesssor before the term expires whether he elects to renew, as the lessor should know when the term expires whether he has or has not a tenant." (Emphasis supplied.) The court went on to say that if the option given the lessee is to "extend" rather than "renew" no notice is required and a mere holding over is sufficient to extend the lease.

Appellees argue that "renew" and "extend" should not be words of art, that there should be no distinction, and that though the term "renew" was used in the Butz lease, no notice was required and the holding over renewed the lease for another ten years with all of its provisions including that on the option to buy.

■■ We accept the view of the *Laurent* case regarding renewal when a lease contains an option to renew and contains no statements regarding the time or method of renewal. It is to be noted that commencing with *Prickett v. Ritter* (1854), 16 Ill. 96, the courts of Illinois have sought to bring certainty into farm leasing agreements. That case is the foundation for the rule that when a farm tenant holds over after a lease for a term has expired or without any written lease ever having been executed, he becomes a tenant from year to year. At Common Law he was entitled to six months notice. Later the legislature changed the notice period to 60 days and still later, with respect to farm tenancies, it changed it to four months. (Ill. Rev. Stat., ch. 80, sec. 5.1.) Section 12 of the Landlord and Tenant Act also has as its objective the bringing of more certainty into farm lease agreements by eliminating arguments about the necessity of notice when a lease for a definite term expires.

■■ We feel that for the benefit of both landlords and tenants this same certainty should exist in situations like that presented by the instant case where there is an option to renew a lease but no indication of how or when it is to be done. Whether the option is to *renew* or *extend*, failure of the tenant to give the lessor adequate notice prior to the termination of the lease invokes the provisions of section 12 of the Landlord and Tenant Act giving the landlord the right to take possession without notice and that if the tenant does hold over into the next crop year, the landlord not having sought possession within a reasonable time, he becomes a tenant from year to year under conditions as expressed in *Wanous v. Balaco* and *Bell v. Groom*. To hold otherwise would deprive the landlord of the benefit of section 12 of the Landlord and Tenant Act and would cast doubt on how he could regain possession if the tenant or his heirs or assigns remained on term after term without committing

any breach of the lease. Though for some purposes there may be valid distinctions between "renew" and "extend," for the purpose of altering the status of a "hold over" tenant who has given no notice to renew or extend, we see none.

What of the option to purchase granted in the original lease, is it carried over to become one of the terms of the new year to year tenancy? In *Bell v. Groom* and *Wanous v. Balaco* it was stated that only those provisions of the former lease which are "applicable to the new condition of things" will pertain to the ensuing tenancy from year to year. We interpret this to mean that the former lease is no longer effective as a contract but that its terms may be consulted in determining rent, costs, and essential duties of both landlord and tenant under the tenancy from year to year. Special provisions created by the lease agreement, such as an option to purchase, a promise to make some improvement or to give the tenant a bonus for high yields, having lapsed with the lease which was not renewed or extended, and not being essential to a determination of usual farm landlord-tenant rights and duties, would not be a part of the tenancy from year to year.

■■ Accordingly, we hold that the lease in the instant case was not renewed, that the lessees became tenants from year to year in 1965, and that the option to purchase could no longer be exercised under the lease.

■■ We turn now to the second issue: Does the language in the will of Eva Butz create an option to purchase exercisable after her death? Appellants argue that it does not. Paragraph FIFTH of Eva Butz' will states: "Since I have entered into an agreement with my son NORBERT BUTZ for the sale of my farm located in Shiloh Valley Township, St. Clair County, Illinois to be performed within two years from my death, I direct that my Executors shall carry into effect the terms of said agreement should by son, NORBERT, desire to complete and comply with its terms * * *." Appellants argue that it was not the intent of the testatrix to create a new right and that the expression "I direct that my Executors shall carry into effect the terms of said agreement should my son, NORBERT, desire to complete and comply with its terms * * *" refers to the lease and that since Norbert did not renew the lease there are no valid terms with which the executors need comply. We do not so interpret paragraph FIFTH. The whole reference is to the agreement regarding the sale of the farm, not the lease or any of its other terms. The language is mandatory, not precatory. Paragraph SIXTH of the will simply recognizes the fact that land continues to appreciate in value and that if when the option is exercised its value is greater than the $25,995 stated in the lease, the optionees rather than the estate should bear the expense of the death taxes.

■■ That a will may incorporate by reference the provisions of other documents, whether or not those other documents are still operative, is well settled. (*In re Meskimen's Estate* (1968), 39 Ill.2d 415, 235 N.E.2d 619.) The tests for such incorporation are well expressed in *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Art Institute of Chicago* (1950), 341 Ill.App. 624, 94 N.E.2d 602, where it is said: "The Illinois law has been laid down for us in a number of cases. It requires that the will should refer to the paper to be incorporated as being in existence at the time of the execution of the will in such a way as to reasonably identify the paper and to show the testator's intention to incorporate and make it a part of his will, and the document must in fact be in existence at the time of the execution of the will." In this case we find that a copy of the lease is in existence; it is a part of the record. It was in existence at the time of the execution of the will. The reference in the will is definite with respect to the portion of the document it incorporates. The intent of the testatrix is clear. If she had meant to condition the right of the optionees by requiring that the lease be renewed she could have so stated; or she could have omitted paragraph FIFTH from her will, since paragraph SIXTH imposes on the optionees the duty to pay death taxes.

■■ The testatrix was not bound to give her children equal shares of her estate. (*Daly v. Daly* (1921), 299 Ill. 268, 132 N.E. 495.) Since she could have devised the farm in question to her son Norbert and his wife she could most certainly create an option in her will giving them the right to purchase it at less than market price. This she has done. In *Stern v. Stern* (1951), 410 Ill. 377, 102 N.E.2d 104, the court recognized the right to create an option to purchase by will, at less than real value, and stated that the court has a duty to search for language supporting the implication of a gift. In the instant case the intent, as expressed by the will of Eva Butz, is evident and the language is clear and mandatory.

For the foregoing reasons the decree of the trial court will be affirmed.

Affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.